Per Curiam.

The defendants have been convicted of a violation of section 926-a of the Penal Law, which reads as follows:
“ Circulating false statements concerning financial responsibility of any person, firm or corporation prohibited.
“ Any person who knowingly and wilfully states, delivers or transmits by any means whatever to any person, firm or corporation, any false and untrue statements of a fact concermng the financial responsibility of any person, firm or corporation, with intent that the same shall be acted upon, is guilty of a misdemeanor.”
The gist of the charge was that defendants, knowing that a borrower from defendant bank had attempted to defraud the bank by the use of false accounts receivable as collateral for a loan, conspired to and did state to various inquirers that the bank’s experience with the borrower was satisfactory, and that it was reluctant to lose the business of the borrower. The motive was alleged to be a desire on the part of the defendants to secure payment to the defendant bank of a balance due on a loan.
In view of the fact that there do not appear to have been any precedents under this section of the Penal Law, we have examined into the Mstory and purpose of the statute. We have con- *570 eluded that this law was never intended to apply to utterances other than those of a defamatory or derogatory nature. The statute was first enacted in 1933 (L. 1933, ch. 422) as section 1354 of the Penal Law. It was placed in article 126 of that law entitled “ Libel ”. It would thus seem that the Legislature was seeking to punish the circulation of false statements of fact concerning the financial responsibility of another that would be derogatory in nature so as to cause possible injury to the subject of the misstatement. If the law intended to forbid dissemination of false statements of a laudatory nature that might mislead the inquirer to his detriment — as was the theory of the prosecution in the present case — it is clear that the section would not have been placed under the heading of criminal libels.
By chapter 561 of the Laws of 1940, former section 1354 was renumbered section 926-a of the Penal Law and placed in the article relating to 11 Frauds and Cheats ”. No change was made in the language of the statute. We agree that as now captioned, and if read literally, the language of the section is broad enough to include a charge of the present nature. But examination into the circumstances of the transposition of section 1354 to section 926-a discloses that the bill accomplishing the change was referred to by the Law Revision Commission recommending it to the Legislature as a “ Revision Bill ”, a term used to describe a change in form and not in substance (N. T. Legis. Doc., 1940, No. 65 J). A footnote appended to chapter 561 of the Laws of 1940 clearly manifests the intention to renumber the law without any substantial change. As this is a statute defining a crime, we are required by the applicable rules of construction to hold that as no intent to effect a change in substance was disclosed and as the original law was clearly confined to the publication of derogatory statements, the present law must be likewise construed. (Fifth Ave. Building Co. v. Kernochan, 221 N. Y. 370.)
Ordinarily this determination would dispose of the appeal as it requires the dismissal of the indictment. We feel, however, that having considered the facts it is proper to add that even if we were to construe this law so as to uphold the indictment, we are of the opinion that the facts adduced were insufficient to establish the guilt of the defendants beyond a reasonable doubt upon any of the counts on which they were convicted.
We find that there was no direct proof of conspiracy and, in our opinion, insufficient circumstantial evidence to support any finding of the existence of any corrupt understanding or agreement between the defendants. We also find no sufficient proof of any substantive crime.
*571 In substance, the proof showed that one Benjamin had borrowed a large sum of money from the defendant bank upon collateral consisting of the assigned accounts receivable on a “ non-notification ” basis. The individual defendants were officers or employees connected with the credit department of the bank. The false statements they were charged with making were answers to routine inquiries made of the credit department by outsiders concerning Benjamin’s standing. They appear to have been handled in routine fashion. In at least one instance they did not come from another lending institution. Unless there was a corrupt agreement or understanding that they would give out false information with knowledge of its falsity and with intent that it be acted on by the inquirers, there would be no criminal conspiracy. The loan had been reduced from approximately $100,000 to about $26,000. There was insurance covering 85% of any loss from fraud up to $250,000. The finding of a corrupt understanding was unwarranted on this proof. It was based on suspicion and surmise rather than proof which showed its existence beyond a reasonable doubt.
Nor do we find sufficient proof to sustain a finding of guilt on the substantive counts. The proof showed that Benjamin assigned accounts receivable based on alleged sale of automobile jacks to one customer — a merchant of apparent good standing in Chicago. It appears that some difficulty had arisen when employees of the credit department of the bank had attempted to audit Benjamin’s books and to check up on the existence of underlying shipping documents to support the invoices assigned. Further, it also appears that information had come to one of the defendants that might arouse suspicion as to whether any large quantity of jacks had been shipped. While an investigation was under way which was only partially completed, and when the bank had only reached the point where they had developed some concern as to the validity of the transactions, Benjamin, expressing real or feigned indignation at the fact of any investigation, paid off $73,340 without demand and with the statement that he would liquidate the balance of the loan promptly rather than continue to do business as a borrower from the bank. The check effecting this payment was a check of the customer in Chicago, which cleared in due course.
The credit inquiries which led to the charges against defendants came at about this time. The individual defendants were part of a credit department of a bank, which had transactions with a customer who had recently liquidated a large part of his loan. They could have refused to give any information, or have *572 disclosed the suspicious circumstances which led them to start an investigation, but in either event they might have been unfair to the customer or risked a charge of defamation. Instead they said their experience was satisfactory, or that they were reluctant to lose the account. They added to this in one instance a statement that they never gave any recommendation as to customer’s credit as a matter of policy. The individual defendants had no personal interests to serve. In our opinion even if the statute be construed to cover false laudatory statements it would not have been intended to place upon the employees of the credit department of a bank the onus of a criminal act for failure to reveal mere'suspicion of its customer’s honesty. In such a case there would have to be proof of knowledge by defendants of the customer’s actual dishonesty rather than mere concern or suspicion with respect thereto to justify a conviction. No such knowledge of dishonesty had been established as to these defendants.
In so holding we have not overlooked the statements made by the defendants to the District Attorney when the latter investigated the matter, nor those found in the inter-office communications. Read as a whole and in the light of the surrounding circumstances, we do not find admissions there that would constitute sufficient proof of actual knowledge by the defendants of Benjamin’s purpose to cheat.
The judgment should be reversed and the indictment dismissed.
Glennon, Dore, Callahan and Van Voorhis, JJ., concur; Peck, P. J., concurs upon the ground that the guilt of the defendants is not established beyond a reasonable doubt..
Judgment reversed and indictment dismissed.